Sue Ellen Tatter
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT WILLIAM LERVAAG (D-1) and RONALD H. FRAZE (D-2),<br><br>Defendants. | NO. 3:05-cr-00089-01-RRB<br><br>**SENTENCING MEMORANDUM OF THE DEFENSE** |

The defendant, ROBERT WILLIAM LERVAAG , through counsel, presents this memorandum to the court for sentencing set for October 18, 2006.

**I.    INTRODUCTION**

Robert Lervaag is a 69-year-old father and husband with no prior criminal record.  He is college educated and has worked hard all his life, largely in financial and administrative positions.  At the present time, he and Ronald Fraze hold a franchise with Westaff which provides temporary employment for Alaskan companies.  They currently

provide employment for more than 100 Alaskans. (See Exhibit A, Printout of Westaff time cards.)

The defense believes Mr. Lervaag, who has lived blamelessly for decades, is not a thief or even a sharp dealer. He has been a loyal husband for 47 years. He has raised three law-abiding professional sons by providing a good role model. He cares for grandchildren, nieces and nephews. His judgment, during the period of this offense, was clouded by substantial disagreement, frustration and poor communication with the Native corporation forming a joint venture with Mr. Lervaag's company. The offense is not typical of his life, and is an aberration in his behavior.

A.  The Joint Venture

From 1992 until about 2000, Mr. Lervaag and Mr. Fraze, and their company North Employment, took part in a joint venture with Chugach Development, a Native corporation. The purpose of the joint venture – Chugach North – was to provide temporary employment for Alaskan companies and also to enable the Native corporation to enter the temporary employment field.

The joint venture started well. Unfortunately, as time went on and management of the Native corporation changed, the communication lines broke down. During this period of time, Mr. Lervaag found that the joint venture did not have enough working capital to make payroll on time. He was not able to resolve this situation with the Native corporation because of poor communication. However, the joint venture had a line of credit with a bank, and it could borrow money based on a percentage of accounts

receivable. To meet payroll demands on time, Mr. Lervaag admittedly constructed false accounts receivable to procure advances on the loan.

In 2000, the corporation and the bank discovered the problem. The bank requested that Chugach pay down the line of credit which had arisen based on the constructed accounts receivable. The corporation choose to pay $900,000 down, although there were several other options presented by the bank. (See Exhibit B, Internal Chugach document discussing three options for pay down.)

B.     The Mediation

As required by the joint venture agreement, the case went to mediation. Mr. Lervaag was deposed. He forthrightly described his artificial creation of accounts receivable for the bank. During the mediation, Mr. Lervaag and Mr. Fraze could no longer afford to pay their attorney, and represented themselves in the arbitration. They did not present a real defense, nor did they succeed in articulating the communication difficulties with corporate management and other mitigating circumstances. (For example, Mr. Fraze and Mr. Lervaag were not able to articulate and prove that Dave Stark, a Chugach North employee, did substantial work for the joint venture. Therefore, the arbitrator considered Mr. Stark's total salary as an item of damage, as if he were doing no work. A minimally competent attorney would have subpoenaed Mr. Stark and his time records to show the true facts.) In the end, fighting a well-paid law firm representing the Native corporation, Mr. Fraze and Mr. Lervaag lost the mediation, and the arbitrator set the civil judgment in excess of $1 million dollars.

### C.  The Present

Mr. Fraze and Mr. Lervaag have a substantial judgment against them. They are each paying approximately $5,000 per month from their earnings at Westaff toward this judgment. Mr. Lervaag does not have savings and is living hand-to-mouth. His home is dilapidated, needing a new roof and a new furnace. He and his wife Joan do not take vacations. They are not able to assist their three adult sons financially. They have no money sequestered. They face old age, and deteriorating health (Mr. Lervaag has a hip replaced and needs knee replacement) with no assets other than Social Security, and overwhelming debt.

## II.  SENTENCING GUIDELINES ISSUES/LOSS AMOUNT

As the presentence report indicates, the guidelines from 2000 should be used in this case. The parties have agreed that the loss amount is somewhere between $702,000 and $900,000. Under the defense estimate, Mr. Lervaag would face offense level 16 (6 + 10). Under the government's $900,000 amount, he would face offense level 17 (6 + 11). U.S.S.G. § 2F1.1(a) and (b) (2000). Mr. Lervaag's final offense level would be 17 under the lower estimate for a guideline range of 24-30 months and 18 under the higher estimate for a guideline range of 27-33 months. Thus, which loss amount is more reasonable is important to the advisory guideline sentencing range.

The corporation did choose to pay $900,000 to bring the loan for the line of credit current. This is a possible figure for "loss amount," as the government suggests. However, attached documents also suggest the lower amount of $702,000 is reasonable.

Exhibit B, an internal memo from Chugach, discusses various alternatives, some under $900,000, to pay down the loan. Exhibit C is a page from a Chugach-prepared accounting used as an exhibit at Mr. Lervaag's deposition. This document suggests that the total of "unsupported invoices" – the false accounts receivable – was approximately $659.000. Exhibit D is a page from the arbitrator's decision supporting the $702,000 figure.

"Amount of loss" is a difficult and fluid concept under the guidelines. This case does not involve a simple embezzlement or theft of X dollars. Here, where there are two reasonable, supported estimates, and where the loss estimate affects the amount of prison time recommended, the court should accept the lesser amount. See, eg., United States v. Martinez, 946 F.2d 100, 102 (9th Cir. 1991) (rule of lenity requires lower offense level where cocaine quantity disputed: ". . .the rule of lenity requires that we infer the rationale most favorable to the appellants and construe the guidelines accordingly." Boochever, J.)

The defense believes there are numerous rationales here for a downward departure of the relevant sentencing range from the guidelines, such as aberrant conduct, advanced age and attendant health problems, lack of likelihood of recidivism and family responsibilities. However, these topics also fall under the general sentencing statute and will be discussed in the next section.

### III.   GENERAL SENTENCING FACTORS

This court must make an accurate guidelines computation. United States v. Mix, 442 F.3d 1191, 1195 (9th Cir. 2006). However, the sentencing law is set forth in 18

U.S.C. § 3553(a), which lists various categories for the court's mandatory consideration. United States v. Booker, 125 S.Ct. 738 (2005).

The court must consider the nature and circumstances of the offense. In this case, the offense involves misrepresentation of accounts receivable to the bank in order to obtain working capital for the joint venture. This caused numerous problems for the joint venture, its parent corporation, and the bank. Mr. Lervaag admitted his conduct in depositions, pled guilty and does not contest adjustments for more than minimal planning, and abuse of trust/special skill.

The court must also consider the history and characteristics of the defendant. Mr. Lervaag is 69 years old and extremely unlikely to re-offend. See, Simon v. United States, 361 F.Supp.2d 35 (E.D.N.Y. 2005). He is also likely to suffer harm and present health care concerns within the Bureau of Prisons. His hip is unstable and he needs a knee replacement.

This case presents aberrant behavior in an otherwise blameless life. The defendant has worked hard and is currently employing numerous Alaskans while paying money to the victims. Mr. Lervaag's family responsibilities to his wife, children, grandchildren, nieces and nephews, as described in the attached letters (Exhibit E), are a further consideration for the court. See, United States v. Leon, 341 F.3d 928 (9th Cir. 2003) and United States v. Aguirre, 214 F.3d 1122 (9th Cir. 2000).

The court, under 18 U.S.C. 3553(a)(2), must also consider the seriousness of the offense, adequate deterrence and protection of the public. Although this is a serious

offense, it is related to a unique set of facts and a particular bad business relationship, and is unlikely to recur again. Mr. Lervaag does not present a danger to the public here.

Finally, in addition to the guidelines, the court must consider the kinds of sentences available. 18 U.S.C. § 3553(a)(3). Community confinement, unlike prison, will enable Mr. Lervaag to continue to earn money for the victims and help Alaskans gain employment. It would also permit community service and care-taking for family members, particularly Mrs. Lervaag and the grandchildren.

The main dictate of the statute is that the court apply these factors to craft a sentence "sufficient, but not greater than necessary."  If a sentence of probation, home confinement or community confinement can achieve the stated sentencing objections, then the court should not oppose a harsh jail term.

### IV.    CONCLUSION

The bank fraud here was serious. However, it resulted not from opportunism or greed, but from frustration with a difficult business relationship. Mr. Lervaag admitted his conduct and has begun to make amends. The end of his life is now beset with financial worries, tax problems, shame before his family and community, his wife's extreme anxiety and his own fear of incarceration among a younger, rough jail population. He has been punished severely already. The court should impose a reasonable sentence which will allow him to work and care for his family.

DATED this 11th day of October 2006.

Respectfully submitted,

s/Sue Ellen Tatter
Assistant Federal Defender
601 West 5th Avenue, Suite 800
Anchorage, AK 99501
Phone:    907-646-3400
Fax:       907-646-3480
E-Mail:   sue_ellen_tatter@fd.org

Certification:
I certify that on October 11, 2006,
a copy of the *Sentencing Memorandum of the Defense* was served electronically on:

Karen Loeffler
Assistant United States Attorney
U.S. Attorney's Office
222 West Seventh Avenue #9, Room 253
Anchorage, AK  99513-7567

Ronald A. Offert, Esq.
733 West 4th Avenue, Suite 206
Anchorage, AK 99501

and a copy was hand delivered to:

U.S. Probation & Pretrial Services
222 W. 7th Avenue, #48, Room 168
Anchorage, AK 99513-7562

s/Sue Ellen Tatter