```
                 IN PROCEEDINGS BEFORE
          THE AMERICAN ARBITRATION ASSOCIATION
             COMMERCIAL ARBITRATION TRIBUNAL
```

```
In the Matter of the           )
The Arbitration Between        )
                               )
CHUGACH DEVELOPMENT            )
CORPORATION,                   )
                               )
              Claimant,        )
                               )
     and                       )
                               )
NORTH EMPLOYMENT AGENCY,       )
INC., ROBERT LERVAAG AND       )
RONALD FRAZE,                  )
                               )
              Respondents.     )
_____)
```

Case No. 75 180 00034 01 JISI
Case Administrator: Jill A. Siegrist

### ARBITRATION AWARD

This dispute comes to arbitration by virtue of Section 13 of the joint venture contract between the parties dated December 28, 1995 (Exhibit 12). Section 13 of the contract states that "Any controversy or claim arising out of or relating to this Agreement shall only be settled by arbitration in accordance with the rules of the American Arbitration Association, one Arbitrator, and shall be enforceable in any court having competent jurisdiction."

This matter came on for hearing on February 17 and 18, 2003. Claimant, Chugach Development Corporation

("CDC")[1] was represented by counsel, and Respondents Robert Lervaag ("Lervaag") and Ronald Fraze ("Fraze") represented themselves and their corporation, North Employment Agency, Inc. ("North")[2]. Both Claimant and Respondents presented evidence and testimony. It was stipulated at the hearing that all of the exhibits, including the additional exhibits presented for the first time at the hearing, were to be admitted into evidence. The hearing was held open past the presentation of all evidence and testimony, in order that the parties might submit closing briefs. A closing brief was submitted by Claimant's counsel; Respondents submitted no closing briefs, and the hearing was closed on February 20, 2003.

Subsequently, at the request of the arbitrator, a conference call was held on February 27, 2003, for the purpose of clarifying the position of the parties on certain issues raised by the arbitrator. Participating in the conference call were counsel for Claimant, Mr. Blumstein, and Respondent, Robert Lervaag. Respondent

---

[1] The original claimant was Chugach Diversified Investments, Inc. ("CDII"). CDII merged into Chugach Development Corporation in June, 2002. On the first day of the hearing, Claimant's counsel moved that CDC be substituted in place of CDII. Respondents did not object, and the motion was granted. The caption for this case has been modified accordingly.
[2] Lervaag and Fraze are all of the shareholders, directors and officers of North.

2

Ronald Fraze was present at Mr. Lervaag's side during the call, but he did not participate directly on the telephone.

CDC alleges on behalf of itself and its predecessors, Chugach Business Services, Inc. ("CBSI") and Chugach Diversified Investments, Inc. ("CDII"), that North, Lervaag and Fraze have damaged their joint venture, and therefore the CDC as a 51% joint venture partner, through fraud, self-dealing and misappropriation of hundreds of thousands of dollars. The exact amount of these claims may never be known, as the Respondents were in control of and responsible for maintaining the books of account of the joint venture partnership, known as Chugach North Technical Services, Inc. ("CNTS"). Those claims presented at the hearing were for only those elements which CDC, its accountants and auditors have uncovered.

By and large, the Respondents freely admit their duplicity. The testimony of Lervaag and Fraze for the most part corroborates that of Claimant's primary witness, Angela Astle, assistant controller for Chugach Alaska, Inc.[3] Respondents' testimony varied from that of Ms. Astle, if at all, only upon minor factual issues and in certain instances upon the exact amounts claimed by CDC to have

---

[3] Chugach Alaska, Inc. is a corporation related to CDC. It is a regional native corporation as defined by the Alaska Native Claims Settlement Act, 43 U.S.C. Section 1601 et seq.

3

been purloined by Respondents. With respect to the accounting for the contractual breaches accomplished by Respondents, I have determined that the numbers provided by the Claimant and Ms. Astle are well supported by the accounting data audited and analyzed by Ms. Astle and her team, and these figures are more reliable than those figures presented by Respondents.

Respondents' "defenses" to Claimant's claims are that the Claimant failed to honor its obligations under the joint venture agreement, Exhibit 12, by not capturing new accounts and developing new business opportunities for CNTS. Respondents also complain that, beginning in approximately 1998, Lervaag and Fraze were omitted from the decision-making process of the joint venture, and they were not consulted regarding the future direction of the organization. Also, Claimant in year 2000 met with North's employees without Lervaag's and Fraze's knowledge or approval. These arguments in defense of Respondents' acts and omissions are not persuasive and must fail.

Lervaag and Fraze, individually and through North, utilized several schemes to defraud Claimant, North's joint venture partner, to whom Respondents owed the highest duty of care and trust. These most outrageous schemes are these:

4

1. **Accounts receivable scheme.** Lervaag made false entries on the accounts receivable ledger for CNTS, to inflate the listed receivables. The ledger was used by CNTS's lender to compute the line of credit available to CNTS. Lervaag and Fraze at the hearing conceded that falsifying the accounts receivable ledger provided CNTS with the extra cash from the line of credit necessary for them to "loot" the joint venture as they did. After CDC completed its audit of the joint venture for the year 2000, CDC met with representatives of Key Bank. CDC was required to pay down the line of credit by over $702,000 to bring the credit line back in conformity with the funding formula.

2. **Lervaag and Fraze Entities.** Lervaag and Fraze set up with a third party, David Stark, an Alaska limited liability company known as Datapro LLC. Lervaag and Fraze caused CNTS to provide services to Datapro for which Datapro has never paid CNTS. Lervaag, Fraze, David Stark and Jaime Hildalgo set up another Alaska limited liability company, Sytec LLC. As with Datapro, Lervaag and Fraze caused CNTS to provide services to Sytec for which Sytec has never paid CNTS.

ECCO Inc. is an Alaska corporation wholly owned and controlled by Lervaag and Fraze. Between 1994 and 2000, Lervaag and Fraze caused CNTS to provide over $700,000 of services to ECCO at CNTS's cost, with no markup for overhead and profit expenses. Lervaag, Fraze and Leissa Wright set up an other Alaska limited liability company, HR Designs LLC. Lervaag and Fraze caused CNTS to provide services to HR Designs for which CNTS has never been paid.

3. **Payroll tax scheme.** In an elaborate scheme, Lervaag, with Fraze's knowledge and approval, caused CNTS to pay Lervaag's and Fraze's federal income tax obligation for 1998, 1999 and 2000.

It is quite clear from the evidence and testimony presented at the hearing that Lervaag and Fraze are personally and directly responsible and liable, jointly and severally, for their fraud, willful misconduct and self-dealing accomplished while managing the joint venture, CNTS. In addition, they are also personally responsible, jointly and severally, on a vicarious basis for their actions as officers, directors and shareholders of North. Such actions include: obtaining funds from a bank using a fraudulent accounts receivable scheme, paying joint venture

money to North under false pretenses, using North's payroll employer status to defraud Claimant of payroll taxes due in connection with the personal incomes of Lervaag and Fraze and using North's payroll employer status for misappropriating unemployment tax money.

Money damages are hereby awarded to CDC against Lervaag, Fraze and North, jointly and severally, as follows:

1. Excess interest paid to lender as result of A/R scheme[4]  $113,965
2. Repayment to lender of improperly Borrowed funds[5]  358,276
3. Misappropriated funds  286,038
4. Improper cash advances  50,000
5. Improper write-off of Sytec receivable  8,400
6. Improper write-off of Datapro receivable  26,131
7. Unpaid HR Designs invoice[6]  10,453
8. Unpaid ECCO invoices[7]  32,954

---

[4] Lervaag and Fraze concede that this scheme lasted for several years, and they concede that excess interest was paid by the joint venture as a result. Respondents have not provided information sufficient to compute any excess interest, and Claimant's exhaustive audit presents figures for year 2000 only. In lieu of an award based upon actual excess interest paid for multiple years, for which the information is lacking, the award for this line item is instead equal to Claimant's share (51%) of the total interest paid by the joint venture on its line of credit for year 2000.
[5] This line item is 51%, or the Claimant's share, of the actual amount repaid to Keybank.
[6] This line item is 51%, or the Claimant's share, of the actual, unpaid invoice.

7

| | | |
|---|---|---|
| 9. | Unpaid Sytec invoices[8] | 16,981 |
| 10. | Unpaid Datapro invoices[9] | 17,147 |
| 11. | Disgorgement of annual salaries for Lervaag and Fraze for year 2000[10] | 127,500 |
| 12. | Dave Stark salary improperly paid by CNTS[11] | 71,279 |
| 13. | Excess payroll taxes, FY 1998[12] | 19,156 |
| 14. | Excess payroll taxes, FY 1999[13] | 19,156 |
| 15. | North's share of joint venture negative equity | 304,873 |
| 16. | Excess G&A expenses in year 2000[14] | 179,700 |
| | **SUBTOTAL** | $1,642,009[15] |

In addition, CDC is awarded against Lervaag, Fraze and North, jointly and severally, its attorney's fees in the amount of $213,000, its forensic auditors' expenses

---

[7] This line item is 51%, or the Claimant's share, of the actual, unpaid invoices.
[8] This line item is 51%, or the Claimant's share, of the actual, unpaid invoices.

[9] This line item is 51%, or the Claimant's share, of the total salaries from the joint venture to Lervaag and Fraze.
[10] This line item is 51%, or the Claimant's share, of the excess payroll taxes paid.
[11] This line item is 51%, or the Claimant's share, of the total David Stark salary paid.
[12] This line item is 51%, or the Claimant's share, of the total, estimated, excess payroll taxes for 1998.
[13] This line item is 51%, or the Claimant's share, of the total, estimated, excess payroll taxes for 1999.
[14] This line item is 51%, or the Claimant's share, of the total, excess G&A expense for year 2000.
[15] This total does not include amounts due from North to its own 401(k) deferred compensation plan. Nor does this total include amounts due from North to the state of Alaska for North's unemployment tax (ESC) contribution. Claims for these amounts were presented at the hearing, and these claims are denied because they represent amounts owed by North directly to third parties, not the Claimant.

of $39,000 and its in-house personnel costs incurred in reconciling the financial statements for CNTS of $48,720.

The administrative fees of the American Arbitration Association, totaling $14,750.00, and the compensation of the Arbitrator totaling $6,058.51, shall be borne in full by the Respondents. The balance of the deposits due to AAA have not been paid by CDC.

North, Lervaag and Fraze shall be liable, jointly and severally, to pay to CDC the sum of Eleven Thousand One Hundred Ninety Two Dollars and Fifty Cents ($11,192.50) as reimbursement for AAA administrative fees and arbitrator compensation previously advanced to the Association by CDC. North, Lervaag and Fraze shall be liable, jointly and severally, to pay AAA the sum of Five Thousand Two Hundred Six Dollars and One Cent ($5,206.01) for the AAA fees remaining due.

Interest shall accrue from December 31, 2000 on the total amount of this award, excluding AAA administration fees and the arbitrator's fees. This amount is $1,942,729.00, and this interest shall accrue on the unpaid balance at the statutory rate of interest applicable to unpaid judgments in Alaska, A.S. 09.30.070. Interest shall accrue from the date of this award, at the same rate, upon the amount owed by Respondents to CDC as reimbursement for

administrative fees and arbitrators fees, which is the amount of $11,192.50.

This Award is in full settlement of all claims and counterclaims submitted to this arbitration. All claims not expressly granted herein are hereby denied.

Dated at Anchorage, Alaska this 21 day of March, 2003.

_____
Mark S. Bledsoe, Arbitrator